UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

COLLIS LEE,                    )
                              )
        Petitioner,           )
                              )
v.                            )        Case No. 4:23-cv-485 HEA
                              )
USA,                          )
                              )
        Respondent.           )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, in which Petitioner argues that his conviction for robbery under the Hobbs Act, 18 U.S.C. § 1951(a), cannot not serve as a predicate "crime of violence" to support his additional conviction under 18 U.S.C. § 924(c). Petitioner argues his conviction was for a Hobbs Act "attempt," and therefore  is not a crime of violence which triggers 18 U.S.C. §924(c) under *U.S. v. Taylor*, 596 U.S. 845 (2022). Petitioner further argues his counsel was ineffective for failing to seek a stay pending a ruling in *Taylor* by the Supreme Court.

Subsequent to sentencing, the United States Supreme Court issued its decision in *Taylor* which held that a conviction for an attempted Hobbs Act robbery does not qualify as a "crime of violence" under § 924(c)(3)(A) because no element of the offense requires proof that the defendant used, attempted to use, or

threatened to use force. For the reasons set forth below, the Court will deny Petitioner's motion.

## Facts and Background

On December 9, 2021, Petitioner pleaded guilty to interfering with commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (Count 1) and to brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2). On March 10, 2022, the Court sentenced Petitioner to an aggregate 135-month term of imprisonment. This term consisted of 51 months for the Hobbs Act robbery (Count 1), and a consecutive 84-month term of imprisonment for the § 924(c) charge (Count 2). Petitioner did not file a direct appeal.

As part of the guilty plea agreement signed by both parties, Petitioner stipulated the following facts.

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On December 5, 2020, Defendant Collis Lee and Co-Defendant Diven Steed robbed the O'Reilly Auto Parts store in Jennings, Missouri, within the Eastern District of Missouri.

On that day, Lee and Steed arrived at the O'Reilly Auto Parts store on Jennings Station Road and loitered outside in their car. After a few minutes, they entered the store and announced a robbery by brandishing firearms and stating, "You know what time it is." Steed held in his hands a handgun that appeared to be a rifle and Lee held a handgun. With the robbers' attention

on the two employees, an O'Reilly's customer fled the store, went to an adjacent store, and asked employees there to call 911.

Meanwhile, Steed and Lee proceeded to force the clerks to open as many cash registers as they could. Lee then pistol-whipped the clerk in the face. In order to distract Lee and Steed from the injured clerk, the other clerk advised them he had personal money in the break room. The clerk gave them approximately $60-$100 cash before Steed and Lee made him rejoin the injured clerk. Steed and Lee demanded access to the safe, but the clerks said it was on a timer and could not be opened. Lee then pistol-whipped the injured clerk a second time. During the robbery, Steed made multiple references to killing the two clerks. The clerks were in fact fearful they would be killed. The witnesses noted that Lee was keeping track of the amount of time he and Steed were in the store. Shortly after the robbery began, one of the robbers started shouting "1:30" and the robbers left the store, returned to their vehicle, and immediately fled the scene.

While this was going on, police were responding to the 911 call. Because the St. Louis County SWAT team happened to be on patrol in the area, a large number of police vehicles were nearby and four police vehicles were in the O'Reilly's parking lot before Steed and Lee even left the store. As Steed and Lee entered Steed's sedan in an attempt to flee, witnesses began pointing officers to the suspects. With Lee driving and Steed in the front passenger seat, Steed's sedan fled the parking lot while being pursued by police.

At the first intersection at which they arrived, Lee lost control of the sedan while attempting to make a right hand turn at high speeds. The car drove over the median and t-boned the second car of a three-car funeral convoy. The car into which he crashed was a funeral limousine transporting grieving family members to a funeral home for a funeral service scheduled that morning. Five of the individuals in that limousine were injured in the accident. The accident disabled Steed's sedan.

Steed immediately got out of the car, still carrying the gun he brandished during the robbery. As he fled on foot, he transferred the firearm from one hand to the other, and repeatedly looked back at officers chasing him. Steed ran for a residential neighborhood. While he ran, police ordered Steed to drop his firearm, but he ignored police commands. Because Steed (1) continued to brandish the firearm, (2) was looking over his shoulder at officers as he ran, (3) was fleeing from a violent crime, and (4) was running

directly toward occupied residences where he could either be a threat to residents by entering the residences, or could be a threat to officers by running around a blind corner of a residence and then opening fire at pursuing officers, a police officer shot twice, striking Steed in the buttocks. Upon exiting, the bullet grazed Steed's scrotum.

As a result, Steed fell to the ground and surrendered himself. At the time he was shot, he was on the front lawn of the residence nearest him. This shooting was captured on body cameras of the officers, which corroborates this account of the shooting. The officer's use of force against Steed was a reasonable use of force. Officers began administering medical treatment to Steed immediately after he fell and police disarmed him.

Lee also fled Steed's sedan and ran towards the residential neighborhood, but ran towards a different set of houses in that neighborhood than Steed. Lee tripped and fell, which allowed police to arrest him. As he fell, police heard a firearm falling, leading them to believe he dropped a firearm. Lee repeatedly denying having firearms on him. During a pat down, police found two firearms between his inner sweatpants and outer sweatpants. The firearms had both fallen to his ankles within his pants and officers had heard the metal of the firearms hitting each other when Lee fell to the ground. Police also found large amounts of cash and coins in the space between his two pairs of pants. Once handcuffed and searched, Lee tried to flee on foot, but tripped and fell again. He was then put into a police car and buckled in. Because the police vehicle did not have a transportation cage, Lee was placed in the front passenger seat. Even though a police officer was right outside the vehicle, he unbuckled his seatbelt in preparation to flee once more, but could not leave the car as police were leaning on the door.

After about 10 minutes, police realized he had unbuckled himself and re-buckled him. On the drive to the police station, Lee unbuckled himself again and tried to exit the moving vehicle, but was grabbed and restrained by the officer driving the vehicle and the officer seated behind Lee. When he was removed from the police car at the station, he again tried to run while handcuffed, but again fell to the ground.

An accounting of the O'Reilly registers found $505.18 missing. The store clerk also reported a $100 loss from the personal money he gave to the robbers. Steed's clothing (which was quickly removed on the scene so

officers could treat his wounds) was found to have $165.90 stuffed into the pockets. Lee was found to have $367.25 in his possession.

O'Reilly's Auto Parts operates in interstate commerce, selling products manufactured outside Missouri. O'Reilly Auto Parts is a nationwide automotive parts supply chain, and sells products for a wide array of vehicles, almost all of which are manufactured outside Missouri. The store was closed temporarily following the robbery to allow for the investigation to proceed.

The two handguns on Lee were determined to be a Taurus make, G2c model, 9mm Luger caliber semiautomatic firearm and a Smith & Wesson make, SD40 VE model, .40 S&W caliber semiautomatic firearm. The Smith & Wesson firearm had a magnet placed within it that physically obstructed the slide from operating, rendering it incapable of firing without removal of the magnet. Once the magnet was removed, the Smith & Wesson fired normally. The Smith and Wesson was loaded with an empty chamber and nine rounds in the magazine. The Smith & Wesson firearm had been reported stolen. The Taurus firearm operated normally. The Taurus was loaded with one round chambered and twelve rounds in its magazine. Steed's firearm, which witnesses described as a rifle, was a Pioneer Arms make Hellpup semiautomatic pistol, which is an AK-47 style firearm. It was loaded with one round chambered and 22 rounds in its magazine.

All three handguns were determined by an expert firearms examiner to have been manufactured outside the State of Missouri, and, therefore, each handgun had been transported across state lines and in interstate commerce prior to or during Lee's and Steed's possession. Each handgun can expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law. Lee admits knowingly directly possessing the Smith & Wesson and Taurus firearms and knowingly indirectly possessing the Pioneer Arms firearm in furtherance of a crime of violence, specifically the robbery of the O'Reilly's Auto Parts. Lee admits to pistol-whipping the clerk with one of the two firearms in his direct possession.

Prior to December 5, 2020, Defendant was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. At the time Defendant possessed the aforementioned firearm, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

Petitioner was indicted by grand jury on March 31, 2021, for three counts: (1) interference with commerce by robbery in violation of 18 U.S.C. § 1951, (2) possession of firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1) and (2), and (3) felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On November 5, 2021, Petitioner filed a waiver of pretrial motions. The waiver stated that counsel personally discussed the matter with Petitioner and Petitioner agreed that there were no issues to raise in pretrial motions.

On December 9, 2021, a change-of-plea hearing was held before the undersigned. Pursuant to the plea agreement, Petitioner pled guilty to Count 1, interference with commerce by robbery, 18 U.S.C. § 1951, and Count 2, possession of firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1). In his plea agreement, Petitioner admitted that there was a factual basis for the plea and that he understood the elements of the offenses.

In his plea agreement, Petitioner acknowledged that the United States could prove all the relevant facts of the crime beyond a reasonable doubt if the case were to go to trial. Additionally, during his plea colloquy, Petitioner admitted under oath that he robbed the O'Reilly Auto Parts store and brandished a firearm in connection with the robbery.

After the Government recited the facts as set forth in the plea agreements, the undersigned conducted an inquiry of Petitioner who was under oath.

THE COURT: And as to each, Count One and Count Two, are all of those facts true and correct, Mr. Lee?

THE DEFENDANT: Yes, sir.

THE COURT: As to Count One, did you knowingly rob a commercial establishment engaged in interstate or foreign commerce?

THE DEFENDANT: Yes, sir.

THE COURT: And did the robbery involve cash?

THE DEFENDANT: Yes, sir.

THE COURT: And was the cash in the custody of employees of the commercial establishment?

THE DEFENDANT: Yes, sir.

THE COURT: And did your actions obstruct, delay and affect commerce in some way or degree?

THE DEFENDANT: Yes, sir.

THE COURT: How do you plead regarding Count One?

THE DEFENDANT: Guilty.

THE COURT: And as to Count Two, did you commit the

crime of interfering with commerce by robbery, as set out in

Count One of the indictment?

THE DEFENDANT: Yes, sir.

THE COURT: And did you knowingly possess and brandish

a firearm in furtherance of that crime?

THE DEFENDANT: Yes, sir.

THE COURT: How do you plead regarding Count Two?

THE DEFENDANT: Guilty.

THE COURT: Thank you, sir.

During the change-of-plea hearing, Petitioner confirmed under oath that he had read, discussed with his attorney, and understood the terms of the plea agreement, and that he was guilty of the crimes to which he was pleading guilty. Petitioner also confirmed that no one had made him any promises or offers in order to induce him to plead guilty other than what was contained in the plea agreement, nor did anyone threaten or try to force Petitioner to plead guilty. Petitioner further confirmed that he was satisfied with the representation he received from his attorney and that there was nothing he wanted his attorney to do for him that the attorney had not done in representing Petitioner.

At the conclusion of the hearing, the Court accepted Petitioner's guilty plea, finding that Petitioner was competent to enter a guilty plea` and his plea was made knowingly, voluntarily, and of his own free will.

On March 3, 2022, the Court imposed a sentence of imprisonment of 135, which consists of a term of 51 months on count one and a term of 84 months on count two, to be served consecutively.

Following the conviction, Petitioner did not directly appeal the conviction. On April 17, 2023, Petitioner filed the instant motion for post-conviction relief based on:  ineffective assistance of counsel during the sentencing process when counsel failed to object to sentencing on count two and failed to move to hold sentencing in abeyance pending the Supreme Court decision in *United States v. Taylor*, 142 S.Ct. 2015; denial of due process based on conviction and sentence under 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 for facts which do not constitute a crime; the conviction and sentence are Violative Of Petitioner's Right To Freedom Of Speech And To Keep And Bear Arms And To Petition, His Right To Be Free Of Unreasonable Search And Seizure, His Right To Due Process Of Law, His Rights To Counsel, To Jury Trial, To Confrontation Of Witnesses, To Present A Defense, And To Compulsory Process, And His Right To Be Free Of Cruel And Unusual Punishment Under The Constitution.

Petitioner's appointed counsel filed an Amended Motion to Vacate on September 15, 2023. In the Amended Motion, Petitioner adds Grounds 3 and 4: Ground 3: Count 2 should be vacated for ineffective assistance of counsel in that the charge and stipulated facts proved Petitioner committed attempted Hobbs Act robbery in which asportation of the lucre and unchallenged dominion over the money seized was not established. Ground 4: In the alternative, the Hobbs Act statute in 18 U.S.C. § 1951(a) is not a crime of violence under 18 U.S.C. § 924(c)(3)(A) because it indivisibly defines a crime satisfied by means that fall outside that definition of "crimes of violence" (including attempted robbery or conspiring to commit such robbery).

## Legal Standards

### 28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on grounds that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack."  28 U.S.C. § 2255.  To obtain relief under § 2255, the petitioner must establish a violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003)

⬚

(quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)).  Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing."  *United States v. Addonizio*, 442 U.S. 178, 185 (*1979).  The petitioner bears the burden of proof as to each asserted ground for relief.  Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion, files, and records of the case conclusively show that the movant is not entitled to relief."  *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (citing 28 U.S.C. § 2255(b)).  The motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Engelen v. U.S.*, 68 F.3d 238, 240 (8th Cir. 1995).

**Ineffective Assistance of Counsel Claims**

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prove a claim of ineffective assistance of counsel, the petitioner must show that (1) his counsel did not perform to the degree of skill of a reasonably competent attorney, and as a result, (2) he was prejudiced.  Id. at 687.  Failure to satisfy either of the Strickland prongs [performance or prejudice] is fatal to the

claim. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("If the petitioner makes an insufficient showing on one component, the court need not address both components.").

"*Strickland*'s first prong sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017). An attorney's performance is not constitutionally deficient "unless it is outside the 'wide range of reasonable professional assistance.'" *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment that *Strickland*'s first prong is satisfied." *Id.* (quoting *Buck*, 580 U.S. at 118-119 (cleaned up)). The Court makes "every effort to eliminate the distorting effects of hindsight and consider performance from counsel's perspective at the time." *Id.* (cleaned up). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689). A petitioner "bears the burden to overcome the strong presumption that counsel's performance was reasonable." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013).

A court need not determine whether a movant meets the performance prong of *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground

of lack of sufficient prejudice." *Strickland*, 466 U.S. at 697. "[T]he prejudice prong requires proof that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (cleaned up). This inquiry depends on the likelihood of success if the alleged error were corrected. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Generally, to establish prejudice where a defendant has entered a guilty plea, "the [m]ovant must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59). "[T]he defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (cleaned up). Where the petitioner states on the record that he is satisfied with his lawyer, that no threats or promises had been made to induce him to plead guilty, and admits his guilt, he has a heavy burden to overcome those admissions and show that his plea was involuntary. *Nguyen*, 114 F.3d at 703.

## Discussion

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in

violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Petitioner challenges his conviction under Count 2, 18 U.S.C. § 924(c)(1). § 924(c)(1)(A) mandates a minimum five-year sentence for anyone convicted of "us[ing] or carr[ying] a firearm" "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A)(i). The statute defines a "crime of violence" in two subparts. The first definition is known as the "elements clause" and is found in § 924(c)(3)(A). See *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019). The elements clause covers felonies that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The second definition is known as the "residual clause" and is set forth in § 924(c)(3)(B). The residual clause covers felonies that "by [their] nature, involve[ ] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

The Supreme Court in *Davis* invalidated the residual clause under § 924(c)(3) for being unconstitutionally vague. But *Davis* did not invalidate the elements clause, and "even today the elements clause remains in force." *United*

*States v. Taylor*, 142 S.Ct. 2015, 2019 (2022). Thus, after *Davis*, a conviction qualifies as a "crime of violence" under § 924(c) only if it satisfies the elements clause.

Petitioner argues that a Hobbs Act robbery is indivisible and as such, under the elements clause, a Hobbs Act robbery is not a crime of violence. A criminal statute is divisible when it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 579 U.S. 500, 505 (2016). But a statute that merely lists "alternative means of satisfying one (or more) of its elements" is indivisible. *Id*. at 503. If a statute is "divisible," courts apply a "modified categorical approach," looking to certain permitted sources (such as the indictment or plea agreement) "to determine what crime, with what elements, a defendant was convicted of." *United States v. Kent*, 44 F.4th 773, 775–76 (8th Cir. 2022).

The Eighth Circuit has on several occasions said that Hobbs Act robbery constitutes a "crime of violence" under the elements clause. See *Diaz v. United States*, 863 F.3d 781, 783 (8th Cir. 2017) ("Diaz argues that Hobbs Act Robbery does not qualify as a crime of violence under § 924(c)(3)(A). We reject that contention. [W]e have expressly held that 'Hobbs Act robbery has as an element[,] the use, attempted use, or threatened use of physical force against the person of another,' the operative term in § 924(c)(3)(A).") (citing *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016)).

⬚

The Supreme Court further clarified this issue in *Taylor*, in which it explicitly distinguished attempted Hobbs Act robberies from completed Hobbs Act robberies. See *Taylor,* 142 S.Ct. at 2020 ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause.") (emphasis in original). And the Court explicitly noted that **"[u]nder the portion of the Hobbs Act relevant here, to win a conviction for a *completed* robbery the government must show that the defendant engaged in the 'unlawful taking or obtaining of personal property from the person ... of another, against his will, by means of actual or threatened force.' § 1951(b).** *Id.* **(quoting 18 U.S.C. § 1951(b))** (italic emphasis in original; bold emphasis added).

For this reason, the Eighth Circuit (in an unpublished opinion) and other circuits have continued to hold, post-*Taylor*, that a completed Hobbs Act robbery is a "crime of violence" under the elements clause. See *United States v. Moore*, No. 22-1899, 2022 WL 4361998, at *1 (8th Cir. Sept. 21, 2022) (per curiam and unpublished) ("Though the Supreme Court recently held that attempted Hobbs Act robbery is not a crime of violence, *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022), the plea agreement established that Moore pleaded guilty to a completed Hobbs Act robbery, which is a crime of violence"); see also *United States v. McCoy*, 58 F.4th 72, 74-75 (2d Cir. 2023) (per curiam) ("[W]e see nothing in *Taylor*'s language or reasoning that undermines this Court's settled understanding

that completed Hobbs Act robberies are categorically crimes of violence pursuant

to section 924(c)(3)(A).”); *United States v. Linehan*, 56 F.4th 693, 700 (9th Cir.

2022) (“[I]t is well established both pre- and post-*Taylor* that completed Hobbs Act

robbery is a crime of violence under the elements clause.”).

Further, district courts around the country and one circuit court in an

unpublished opinion have held that the Hobbs Act is divisible at least as between

attempted and completed robberies. See, e.g., *United States v. Eccleston*, No. 20-

2119, 2022 WL 3696664, at *2 (10th Cir. Aug. 26, 2022) (unpublished) (holding

that the Hobbs Act is “divisible into three robbery-based offenses: robbery,

attempted robbery, and conspiracy to commit robbery” because “these three crimes

comprise different elements”); accord *United States v. Taylor*, No. 4:22-CV-273

HEA, 2023 WL 2987043, at *4 (E.D. Mo. Apr. 18, 2023) (holding that the Hobbs

Act is divisible into attempted and completed robberies); *Pratcher v. United States*,

No. 1:19-CV-00215-AGF, 2023 WL 2387500, at *3 (E.D. Mo. Mar. 7, 2023)

(holding the same); *United States v. Legendre*, No. CR 21-51, 2023 WL 2330036,

at *3 (E.D. La. Mar. 2, 2023); *Small v. United States*, No. 2:20-CV-449-DAK, 2023

WL 1993874, at *2 (D. Utah Feb. 14, 2023); *United States v. Stevens*, No. 21-CR-

107-1, 2023 WL 274121, at *2 n.1 (E.D. Pa. Jan. 18, 2023); see also *Linehan,* 56

F.4th at 700 (“[A]n attempt to commit the offense is distinct from the completed

offense.”). The Hobbs Act is divisible into attempted and completed robberies.

At no point has Petitioner disputed the underlying facts of this crime. Petitioner admitted under oath all of the facts contained in the plea agreement and stated on the record. Specifically, Petitioner admits he used a gun to pistol whip the clerk and to force the employees to give him the cash from the O'Reilly store. Petitioner left the premises both in a car and subsequently on foot with the money he had taken from the store. As such, the record conclusively demonstrates that Petitioner committed a completed Hobbs Act robbery under the Supreme Court discussion of completed and attempted Hobbs Act robbery in *Taylor*. Therefore, his conviction and sentence under § 924(c) remain valid under the elements clause under Supreme Court and Eighth Circuit precedent.

Indeed, Petitioner admitted to a completed Hobbs Act robbery in the plea agreement and in open Court. Petitioner attempts to place significant emphasis on the indictment which alleged

> [o]n or about December 5, 2020, in St. Louis County, within the Eastern District of Missouri, Collis Lee and Dive Steed, . . . aiding and abetting each other and acting together, knowingly obstructed, delayed and affected commerce and the movement of articles and commodities in commerce, or attempted to do so, by robbery of O'Reilly Automotive, Inc., d/b/a O'Reilly's Auto Parts, a commercial establishment engaged in interstate and foreign commerce and in the business of buying and selling articles and commodities that have been previously transported in interstate ad foreign commerce. In violation of Tile 18, United States Code, Sections 1951(a) and 2.

While the indictment alleged attempted Hobbs robbery, the evidence established a completed robbery. Petitioner admitted throughout the proceedings

that he had in fact taken money through force and left the O'Reilly store with the money.

Petitioner also argues there was no asportation of the money since Petitioner was apprehended before he could secure the money without apprehension. The statute, however, does not require proof of asportation to a safe haven.

The Eighth Circuit Court of Appeals has not yet specifically addressed this issue. In a recent opinions, the Seventh and Second Circuits Courts of Appeals have analyzed whether the Hobbs Act requires asportation.

> We note that Cobbs's assault of the restaurant's owner and taking of the restaurant's money also arguably would constitute a completed violation of § 1951, which defines "robbery" to be "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). Although he abandoned the backpack with the money, he took the money from the owner with the intent to permanently deprive the owner of the proceeds. See *Smith v. United States*, 291 F.2d 220, 221 (9th Cir. 1961) (explaining that for a bank robbery conviction, which requires the taking and carrying away of property, the "degree of the taking is immaterial, the least removing of the thing taken from the place it was before with intent to steal it being sufficient" (internal quotation marks omitted)); see also 2 Wharton's Criminal Law § 26:15 (16th ed.) ("There is an asportation when the actor carries away the property; any carrying away movement, however slight, is sufficient. Given a taking and asportation, a larceny is committed even if immediately thereafter the defendant abandons the property or returns it to the owner, as long as the defendant acted, at the time of the taking and asportation, with the intent to permanently deprive.").

*Cobbs v. United States*, 141 F.4th 872, 881 (7th Cir. 2025).

Hobbs Act robbery requires proof, inter alia, of an "unlawful taking or obtaining of personal property." 18 U.S.C. § 1951(b)(1). Barrett submits that appellate counsel should have argued that the evidence was insufficient to

prove such a taking or obtaining of the cigarette sale proceeds alleged in Count Five because that money remained in Dafalla's possession and control, as demonstrated by his throwing it out the van window.11 Such an argument is not obviously strong because, on the totality of the evidence, a reasonable jury was not compelled to reach the conclusion urged by Barrett.

In criminal law, the word "taking" means "[t]he act of laying hold upon an article, with or without removing the same. It implies a transfer of possession, dominion, or control." BLACK'S LAW DICTIONARY 1701 (3d ed. 1933); accord BLACK'S LAW DICTIONARY 1755 (11th ed. 2019) (defining "taking" as "[t]he act of seizing an article, with or without removing it, but with an implicit transfer of possession or control"); see also 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW ("LAFAVE") § 19.3 (3d ed. 2017) (stating as to "larceny," "taking occurs when the offender secures dominion over the property").13 Here, evidence showed that Barrett's confederates held guns at the heads of two victims when demanding the cigarette sale proceeds, with the result that one victim promptly turned over approximately $200 in such proceeds. That, by itself, was sufficient to permit a jury to find the taking of property required for robbery. See 18 U.S.C. § 1951(b)(1) (proscribing forcible taking of another's "personal property" without regard to amount or value); see also *State v. Thomas*, 525 S.W.2d 833, 835 (Mo. Ct. App. 1975) (holding taking $4 at gunpoint sufficient to prove "taking" of property constituting robbery even though defendant was charged with taking $23 and claimed that $19 was returned to victim); *Tarver v. State*, 278 Ga. 358, 602 S.E.2d 627, 629 (2004) (holding evidence of "taking" sufficient where defendant took victim's wallet at gunpoint only to discover it contained no money).

Still further evidence showed that the robbers then forcibly ejected these two victims from the van before themselves taking possession of that vehicle and driving off with the demanded money and Dafalla inside. Viewed in the light most favorable to the government, this evidence would have permitted a reasonable jury to find that, at the moment the armed robbers did so, they had effectively taken control of the van, all the money contained therein, and Dafalla. While Barrett might have argued that Dafalla's ability to throw money out the van window raised a reasonable doubt as to whether the robbers obtained control over this property, the jury was not compelled to reach that conclusion. Evidence that the robbers promptly shot Dafalla dead when they realized what he had done would have permitted the jury to

conclude that Dafalla was very much mistaken if he thought that he retained any control over money in the van after the robbers took possession.

*      *      *

Barrett's urged specific intent and asportation requirements for robbery derive from common law. See generally 3 LAFAVE § 20.3.14 But common law is not dispositive here because Hobbs Act robbery is a statutorily defined, not a common law, crime. See 18 U.S.C. § 1951; see generally *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812) (holding there are no federal common law crimes, only federal statutory crimes).

To be sure, where "Congress borrows terms of art" from the common law, a court can assume it does so "know[ing] and adopt[ing]" the common law meaning. *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952). But, as the Supreme Court has explained, that assumption applies only when "a federal criminal statute uses a common-law term of established meaning without otherwise defining it." *United States v. Turley*, 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) (emphasis added).

The Hobbs Act specifically defines "robbery":

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). This definition makes no mention of any specific intent, much less a specific intent permanently to take or obtain property. Nor does it reference asportation or "carrying away" of property, much less require that stolen property be carried to a place of safety.

In urging otherwise, Barrett suggests that specific intent and asportation are implicit in the Hobbs Act's use of the undefined words "taking" and "obtaining." We are not persuaded.

At common law, "taking" is an element of robbery distinct from both intent and carrying away. See *supra* at 76 n.14. This undermines Barrett's claim that "taking" in the Hobbs Act means both "taking" and "carrying away." Appellant's Reply Br. at 3 (internal quotation marks omitted). Moreover, the Supreme Court, in focusing on the text of the federal bank robbery statute, 18 U.S.C. § 2113(a), specifically rejected the assertion that "take" implies a common-law asportation requirement. *Carter v. United States*, 530 U.S. 255, 272, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000). The Court there stated that Congress is "free to outlaw" robbery "that does not involve asportation," which "hardly would have been absurd ... since the taking-without-asportation scenario is no imagined hypothetical." *Id*. "Indeed, a leading treatise applauds the deletion of the asportation requirement from the elements of robbery." *Id*. (citing 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 8.11 (1986)). Carter's reasoning applies with equal force to Congress's use of the word "taking" in the Hobbs Act definition of "robbery." 18 U.S.C. § 1951(b)(1). It does not require asportation.

As for specific intent, such a requirement goes to the mens rea part of a crime. A requirement that property be taken or obtained goes to the actus reus part of the crime. Thus, even if we were to assume arguendo that, in the Hobbs Act, Congress employed the words "taking" and "obtaining" as they are understood at common law, that does not mean that Congress intended for those actus reus elements to convey a specific mens rea requirement.

No different conclusion is compelled here by *United States v. Nedley*, 255 F.2d 350 (3d Cir. 1958), on which Barrett relies. In that case, the Third Circuit held that " '[r]obbery' under the Hobbs Act[ ] is common law robbery" and, thus, requires proof of (1) "forcible taking and carrying away" and (2) "intent[ ] to permanently keep the property so taken." *Id*. at 357 (emphasis added). Nedley, of course, is not controlling authority in this circuit. But more, it is no longer controlling authority even in the Third Circuit. Last year, in *United States v. Stevens*, 70 F.4th 653 (3d Cir. 2023), that court specifically rejected Nedley's reliance on the "common law to import two additional elements" into the Hobbs Act's "statutory definition of 'robbery,' " *id*. at 655. The elements rejected in Stevens are those Barrett unsuccessfully urges here: (1) "a specific intent to steal and to permanently deprive the owner or possessor of his property" and (2) "not merely the taking but also a carrying away of that property." *Id*. (internal quotation marks omitted).

⏃

Such Second Circuit cases as Barrett cites to support a specific intent or asportation requirement for Hobbs Act robbery are not persuasive because they involve convictions under statutes that do not define "robbery." See, e.g., *United States v. Rivera*, 521 F.2d 125, 128 (2d Cir. 1975) (considering conviction for robbery of government property in violation of 18 U.S.C. § 2112); *United States v. Reid*, 517 F.2d 953, 965 (2d Cir. 1975) (same); see also *Carter v. United States*, 530 U.S. at 267 n.5, 120 S.Ct. 2159 (distinguishing between statutes in which Congress "simply punished 'robbery' or 'larceny,' " as in 18 U.S.C. §§ 2112, 2114, 2115, "thereby leaving the definition of these terms to the common law," and statutes reflecting "more prevalent legislative practice of spelling out elements of these crimes").

Moreover, even without defining "robbery," Congress has demonstrated its ability to include or exclude specific intent and asportation requirements in robbery statutes where it deems that warranted. In addressing bank robbery, Congress did not require specific intent or asportation when bank property is taken "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). It is only in the absence of such force, violence, or intimidation that Congress required that a defendant "take[ ] and carr[y] away, with intent to steal or purloin, any property" belonging to a bank. Id. § 2113(b) (emphasis added). See *Carter v. United States*, 530 U.S. at 269, 120 S.Ct. 2159 (construing § 2113(a) to require proof only of "general intent," i.e., "proof of knowledge with respect to the actus reus of the crime").

This reinforces the conclusion we draw from the text of the Hobbs Act. Because Congress there provided a statutory definition for robbery that prohibits taking "by means of actual or threatened force, or violence, or fear of injury," 18 U.S.C. § 1951(b)(1), but is silent on any specific intent requirement, the law demands only that the proscribed conduct was knowing and willful. See generally *Elonis v. United States*, 575 U.S. 723, 736, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015) (holding that when federal criminal statute is "silent on the required mental state, [courts] read into the statute only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct" (internal quotation marks omitted)); *United States v. Francis*, 164 F.3d 120, 121 (2d Cir. 1999) (stating that "absent any express [statutory] reference to intent," courts will "generally presume that proof only of 'general' rather than of 'specific' intent is required" to support conviction). There is no question that a knowing taking or obtaining of

property "by means of actual or threatened force, or violence, or fear of injury," as statutorily required for Hobbs Act robbery, 18 U.S.C. § 1951(b)(1), "falls outside the realm of the 'otherwise innocent.' " *Carter v. United States*, 530 U.S. at 270, 120 S.Ct. 2159. Thus, general intent is all that Hobbs Act robbery requires.

*United States v. Barrett*, 102 F.4th 60, 78–79 (2d Cir. 2024), cert. granted in part, 145 S. Ct. 1307, 221 L. Ed. 2d 395 (2025).

There is no asportation element contained in the statutory language of the Hobbs Act. The reasoning and analysis of the statutory language by the Seventh and Second Circuits is sound and compelling. The Court agrees with the conclusions of these appellate courts that any taking under Section 1951 is sufficient to support a completed Hobbs Act conviction and as such, Petitioner's conviction for the robbery is sufficient to support the conviction for Section 924(c).

Turning to Petitioner's ineffective assistance of counsel claims, Petitioner fails to establish counsel was ineffective. "To prove ineffective assistance of counsel, a defendant must show that her counsel's representation was deficient and that the deficient performance prejudiced her defense." *Champion v. United States*, 319 F. App'x 443, 445 (8th Cir. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result would have been different." *Jackson v. United States*, 956 F.3d 1001, 1006 (8th Cir. 2020) (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome or a

'substantial', not just 'conceivable', likelihood of a different result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044-45 (8th Cir. 2019) (citation omitted).

Even when considering Petitioner's arguments on their merits, Petitioner has failed to show that there is a reasonable probability that his conviction and sentencing outcome would have been different if not for ineffective counseling. As an initial matter, *Taylor* was not issued until after Petitioner was sentenced, and counsel's failure "to anticipate a change in the law ... does not constitute ineffective assistance." *Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999); *Brown v. United States*, 311 F.3d at 875, 878 (8th Cir. 2002)(Counsel cannot be ineffective for not raising an issue that was not supported by precedent at the time); *Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009) ("Counsel is not accountable for unknown future changes in the law.").

Based upon the above analysis, Petitioner's due process claim in Claim Two fails. Petitioner argues his conviction under 18 U.S.C. § 924(c)(1) and 18 U.S. C. § 2) is violative of his due process right. Not only did Petitioner admit, under oath that he was guilty of the offense, but the evidence in the record establishes all the necessary elements.

Petitioner's original Ground Three also fails. In Ground Three, Petitioner claims his conviction and sentence violate his First, Second, Fourth, Fifth, Sixth, And Eighth Amendment rights. As the Government correctly argues, Ground Three

is untimely. Petitioner's conviction became final on March 24, 2022. Since Ground Three does not relate to the *Taylor* decision, he had until March 24, 2023 to file his Section 2255 Motion. Filing it on April 17, 2023 renders this claim untimely.

Moreover, Petitioner merely states a violation of rights without articulating any reasons for the claim. This is insufficient to demonstrate the conviction and sentence were invalid. "Conclusory allegations unsupported by particularized facts are 'subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.' *Blackledge v. Allision*, 431 U.S. 63, 74 (1977); see also *United States v. Abdullah*, 947 F.2d 306, 312 (8th Cir. 1991)." *Rodriguez v. United States*, No. C23-4032-LTS, 2025 WL 2164207, at *4 (N.D. Iowa July 30, 2025).

## Certificate of Appealability

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held.  28 U.S.C. § 2253(a).  However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  *Id*. § 2253(c)(1)(B).  A district court possesses the authority to issue certificates of appealability under § 2253(c) and Fed. R. App. P. 22(b).  *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right.  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36

(2003); *Tiedeman*, 122 F.3d at 523.  To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  *Miller-El*, 537 U.S. at 335-36.

Courts reject constitutional claims either on the merits or on procedural grounds.  "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Having thoroughly reviewed the record in this case, the Court finds that Petitioner has failed to make a "substantial showing" of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).  Therefore, a certificate of appealability will not issue.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, [Docs. 1] and the Amended Motion, [Doc. No. 16], are **DENIED** without a hearing.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in the § 2255 motion because Petitioner has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).

Dated this 22nd day of August, 2025.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE